UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ALIX CAVAS,<br><br>Plaintiff,<br><br>v.<br><br>CHEWY, INC.,<br><br>Defendant. | C.A. No. 1:25-cv-00428-MSM-PAS |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff, Alix Cavas asserts a class action suit against the e-commerce pet store, Chewy, Inc. ("Chewy"), for allegedly misleading customers enrolled in its recurring purchase program, Autoship. Cavas alleges that Chewey overcharged Autoship customers for sales taxes and violates the Rhode Island Deceptive Trade Practices Act ("DTPA"). She also brings claims of breach of contract, unjust enrichment, and negligence. Ms. Cavas claims that Chewy either "overcharges its Autoship customers more sales tax than is due on goods which are discounted through the Autoship program" or "engages in a deceptive and unfair trade practice when it advertises a 'discount' via its Autoship program but in fact offers a rebate or similar, which is material to consumers as it impacts sales tax calculations." (ECF No. 1 ¶¶ 2–3.) In response, Chewy brings this Motion to Compel Arbitration or, in the

alternative, to dismiss the plaintiff's Complaint. (ECF No. 14.) For the following reasons, the Court GRANTS Chewy's Motion to Compel Arbitration.

## I. BACKGROUND

Chewy's Autoship program is advertised as "an easy way to set up repeat deliveries from Chewy and save on the items you buy regularly." (ECF No. 1 ¶ 16.) Chewy advertised a discount for prospective customers as follows:

> When you set up your first Autoship, you'll receive 35% off your Autoship order, with a maximum discount of $20. After that, you'll save an extra 5% on select brands for all future Autoship orders.

*Id.* at 17. "Accordingly, an Autoship customer that orders pet food at $10 per unit would in fact be charged $6.50 for their first order and then $9.50 for all subsequent orders, not including taxes." (ECF No. 1 ¶ 21.)

Ms. Cavas alleges that because Chewy offered a "discount" in the form of a percentage reduction for Autoship customers (rather than a rebate), Chewy was required to calculate the sales tax on the discounted price rather than the original amount. Assuming a 7% sales tax, she alleges "Autoship customers should be charged $6.96 for their first order ($6.50 discounted price plus $0.46 sales tax) and $10.17 thereafter ($9.50 discounted price plus $0.67 sales tax)." (ECF No. 1 ¶ 23.) Instead, Autoship customers were charged sales tax on the full price of goods resulting in charges of $7.30 for their first order ($6.50 discounted price plus $0.80 sales tax) and $10.30 thereafter ($9.50 discounted price plus $0.80 sales tax)). (ECF No. 1 ¶ 24.)

To enroll in Autoship, at the checkout stage of the transaction, a customer may "click a button on the Chewy.com checkout screen labeled 'Yes, make my life easy.'" (ECF No. 14-1 at 11.)




After clicking the button, Ms. Cavas completed her purchase by clicking one of two large orange "Place Order" buttons. (ECF No. 14-1 at 11.) Below the "Place Order" button, the website advised "By placing your order, you agree to Chewy.com's Privacy Policy and Terms of Use." *Id.* The words "Privacy Policy" and "Terms of Use" were underlined hyperlinks that, when clicked, led to those documents. *See id.*



*See* ECF No. 14-4. The second "Place Order" button was located at the bottom of the checkout screen and included the same language adding "[b]y clicking 'Yes, make my life easy,' you agree to Chewy.com's Autoship & Save Terms and Conditions."



ECF No. 14-3.


chewy
Checkout
Questions? 24/7 Help
Continue Shop
Save 35% on your first Autoship
Learn more
Your Shipping Address
Full Name
Street Address
Apt / Suite / Other
City
State
ZIP Code
Phone Number
Why ask?
Ship to This Address
Place Order
By placing your order, you agree to Chewy.com's Privacy Policy and Terms of Use
Order Summary
Subtotal $55.56
Flat-Rate Shipping: FREE
Estimated Tax: $0.00
Order Total: $55.56
Promo Code
Apply
Start your first Autoship order and save up to 35% ($19.45) today on eligible items! More Info
Yes, make my life easy.
You'll save an additional $19.45 on this order!
Frequency
Every 4 weeks
You can easily change, cancel, or reschedule shipments at any time.
Maximum $20 savings on 35% off Autoship promotion. For Autoship-eligible items only. Some exclusions apply. For a limited time.
No, thank you.
You'll buy these items once.
Shop with Confidence
Your orders are safe and secure with Chewy!
100% Money-Back Guarantee
No-Hassle Returns
Secured Transactions
24/7 Customer Service
Google
Customer Reviews
Your Items
Edit Cart
Pedigree Complete Nutrition Roasted Chicken, Rice & Vegetable Flavor Dog Kibble Adult Dry Dog Food, 44-lb bag
$27.78
Quantity: 2
Autoship
Buy Once
Apply Chewy Gift Card
Your Payment Information
Credit or Debit Card
PayPal
Then you'll review and place your order on Chewy.com.
Order Total: $55.56
Place Order
By placing your order, you agree to Chewy.com's Privacy Policy and Terms of Use. By clicking "Yes, make my life easy", you agree to Chewy.com's Autoship & Save Terms and Conditions.

*Id.*

The first page of Chewy's Terms of Use ("Terms of Use") includes an arbitration notice that advises the user of the existence of an arbitration clause through which the consumer and Chewy "AGREE THAT DISPUTES BETWEEN US WILL BE RESOLVED BY MANDATORY BINDING ARBITRATION." The arbitration clause provides:

> EXCEPT FOR A CLAIM THAT MAY BE BROUGHT IN SMALL CLAIMS COURT, YOU AND CHEWY AGREE TO GIVE UP ANY RIGHTS TO LITIGATE CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE ACTION WITH RESPECT TO A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS ACCESS TO DISCOVERY, ALSO MAY BE UNAVAILABLE OR LIMITED IN ARBITRATION.
>
> Covered Disputes and Arbitration Requirement. Any and all disputes between you and Chewy, including disputes arising from or relating to the Site, these Terms of Use, the Privacy Policy, Autoship & Save Terms and Conditions, Gift Card Terms and Conditions and any other terms and conditions that may apply to our Site . . . including disputes about the validity, scope or enforceability of this arbitration provision (collectively, "Covered Disputes") will be settled by binding arbitration . . . .

(ECF 14-10 at 12.)[1] The Terms of Use explicitly prohibit class claims. (ECF No. 14-1 at 14.) The Autoship & Save Terms and Conditions ("Autoship & Save Terms") expressly incorporate the Terms of Use stating:

---

[1] The Terms of Use were updated periodically through January 25, 2025. Neither party asserts that any changes to the Terms of Use materially altered their meaning. (ECF Nos. 14-1 at 13 n.2; 15 at 22.)

> Please note that your use of the Chewy.com website is also governed by our Terms of Use and Privacy Policy as well as all other applicable terms, conditions, limitations and requirements on the Chewy.com website, all of which (as changed over time) are incorporated into these Terms. By placing an order and enrolling in our Autoship program, you accept these terms, conditions, limitations and requirements. Please read these Terms carefully.

(ECF No. 14-15 at 1.)[2]

Ms. Cavas has been a customer of Chewy since 2017 and was enrolled in the Autoship program from March 2022 to July 2025. (ECF Nos. 15-1 at ¶¶ 4–5; 14-2 ¶ 9.) Ms. Cavas asserts that she did not "see or read" the Terms of Use and otherwise "[does] not recall" them. (ECF No. 15-1 ¶ 4.)

## II. STANDARD OF REVIEW

In determining motions to compel arbitration, the Court applies the summary judgment standard. *See Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 175 (1st Cir. 2021). Under this standard, "the court must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (citing *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 92 (1st Cir. 2021)).

A party seeking to compel arbitration, here Chewy, bears the burden of showing that (1) a valid arbitration agreement exists, (2) the movant is entitled to invoke the arbitration clause, (3) the other party is bound by that same clause, and

[2] The Autoship & Save Terms were updated periodically but similarly to the updates to the Terms of Use, no party asserts that any changes altered the meaning of the terms.

(4) the claim(s) fall within the scope of the clause. *See Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 5 (1st Cir. 2014); *Trainor v. Primary Residential Mortg., Inc.*, No. CV 20-426 WES, 2021 WL 2454213 (D.R.I. June 16, 2021). If all four elements are satisfied, the Court must compel the parties to arbitrate. 9 U.S.C. § 4; *see also Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 167 (1st Cir. 2022) ("[W]hen a party agrees to arbitrate a dispute, the FAA leaves federal courts powerless to address the merits of that dispute. Instead, we must send the parties off, as they agreed, to duke out their dispute in their arbitral forum.")

## III. DISCUSSION

### A. Notice & Assent to Chewy's Arbitration Provision

For an arbitration agreement that binds both parties to exist there must first be a valid contract. Here, the parties agree that there is a valid contract. *See* ECF Nos. 1 ¶¶ 99-100; 15 at 14 ("A contractual relationship exists between Chewy and its Autoship customers, including Plaintiff . . . .") The question here is whether, as part of their contractual relationship, the parties agreed to arbitrate the claim that Ms. Cavas now brings before this Court.

#### 1. Rhode Island Contract Principles Govern Whether Ms. Cavas Assented to the Terms of Use

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In Rhode Island, an enforceable contract requires "an offer and an

acceptance," that each party "manifest an objective intent to be bound by the agreement," and "mutual assent or a meeting of the minds between the parties." *E.W. Burman, Inc. v. Bradford Dyeing Assoc., Inc.*, 220 A.3d 745, 753 (R.I. 2019). The Rhode Island Supreme Court has "enunciated a policy in favor of resolving any doubt in favor of arbitration." *Hayden v. Integra Cmty. Care Network, LLC*, 291 A.3d 557, 562 (R.I. 2023).

The parties disagree whether an objective user of Chewy's website is on notice of Chewy's arbitration provision in its Terms of Use sufficient to manifest assent. The Terms of Use are referenced in several places on Chewy's website, including at the bottom of its homepage and twice on its checkout page. Central to determining mutual assent is a determination of the type of online agreement Chewy presented to Ms. Cavas and its other customers.

**2. Forms of Online Agreements: Browsewrap, Hybridwrap, and Clickwrap Agreements**

Generally, courts recognize that there are several forms of agreements through which websites may present terms to users, including "clickwrap," "hybridwrap," and "browsewrap." *See, e.g.*, *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 8–9 (1st Cir. 2021); *Toth v. Everly Well, Inc.*, 118 F.4th 403, 411–12 (1st Cir. 2024); *Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 72–73 (D. Mass. 2023); *Hodosh, Lyon & Hammer, Ltd. v. Barracuda Networks, Inc.*, No. CV 15-316S, 2016 WL 705272, at *6 (D.R.I. Jan. 4, 2016), *report and recommendation adopted*, No. CV 15-316 S, 2016 WL 727166 (D.R.I. Feb. 23, 2016); *Defontes v. Dell Computers Corp.*, No. C.A. PC 03-2636, 2004 WL 253560, at *5–7 (R.I. Super. Jan. 29, 2004), *aff'd sub nom. DeFontes*

*v. Dell, Inc.*, 984 A.2d 1061 (R.I. 2009). The "most robust form" through which a website may establish assent is a clickwrap agreement, where "a user is 'required to expressly and affirmatively manifest assent to an online agreement by clicking or checking a box that states that the user agrees to the terms and conditions.'" *Gaker*, 654 F. Supp. 3d at 72–73 (quoting *Emmanuel*, 992 F.3d at 8.) At the "other end of the spectrum," browsewrap agreements "do not require a user to check a box indicating assent, but merely post terms and conditions of use on the website, 'typically as a hyperlink at the bottom of the screen.'" *Id.* at 73 (quoting *Kauders v. Uber Techs., Inc.*, 159 N.E.3d 1033, 1054 n.26 (2021). In between, a hybridwrap agreement "incorporates elements of clickwrap and browsewrap agreements;generally, these types of agreements provide greater notice of the terms and conditions—and of the website's intent to bind the user to them—than a browsewrap agreement, but do not require the affirmative manifestation of intent that a clickwrap agreement does." *Id.* In such agreements, a user's ability to proceed is not strictly conditioned on express consent, but rather the user is informed by clicking on a particular button and taking action that they are agreeing to particular terms.

Of course, federal and state courts across the country have analyzed numerous hybridwrap and clickwrap agreements, that are nearly identical or closely related in design, and come to different conclusions about whether sufficient notice was provided to a website user. This Court nonetheless proceeds to analyze whether

sufficient notice of the agreement to arbitrate was provided in this context, applying Rhode Island contract law.

### 3. A Hybridwrap Agreement Was Presented to Chewy Website Users

It is undisputed that the Terms of Use generally present at the bottom of the Chewy homepage propose a browsewrap agreement. Such agreements that attempt to bind website users to arbitration are disfavored for their lack of notice. *See Defontes*, 2004 WL 253560, at *6. But Chewy does not argue that Ms. Cavas was bound by the Terms of Use merely by visiting Chewy's *homepage*. (ECF No. 16 at 10.) Chewy instead that sufficient notice was provided on the *checkout page* to Ms. Cavas.

The parties disagree whether Ms. Cavas was presented with a browsewrap or clickwrap agreement on the checkout page. The Court holds that Chewy's checkout page falls into the grey area between the two, known as a hybridwrap agreement. Chewy did not require a user to check a box signaling assent before completing a purchase, as a clickwrap agreement would. But neither did it rely on a user's mere use of the site, as a browsewrap agreement would. Instead, Chewy placed language directly beneath each "Place Order" button stating that ordering, and separately enrolling in Autoship, manifested agreement to the hyperlinked Terms of Use. Rather than requiring a user to check a box to complete their purchase, Chewy incorporated assent into the act, or the click, of purchasing.

On Chewy's checkout page, a user may place their order in two locations: (1) in the top right quadrant of the page or (2) at the bottom of the checkout page. In the

top right quadrant, in a box shaded on its edges to show its contours, a user is notified in grey text directly under the "Place Order" button that "By placing your order, you agree to Chewy.com's Privacy Policy and Terms of Use." The background is white. "Privacy Policy" and "Terms of Use" are hyperlinked, which is indicated by a grey dotted line under the quoted words. The Terms of Use include the arbitration clause that covers all disputes between the parties.

At the bottom of the checkout page, unboxed and directly under the "Place Order" button, the grey text states: "By placing your order, you agree to Chewy.com's Privacy Policy and Terms of Use. By clicking 'Yes, make my life easy', you agree to Chewy.com's Autoship & Save Terms and Conditions." The background is white. "Privacy Policy" and "Terms of Use" are again hyperlinked, along with "Autoship & Save Terms and Conditions," indicated by a grey dotted line under each quoted word. Again, the Terms of Use include the arbitration clause, and the Autoship & Save Terms explicitly incorporate the Terms of Use. The question presented is whether the notice provided by Chewy's hybridwrap agreement was sufficient to alert the user of Chewy's arbitration provision.

**4. Notice Provided by Chewy's Hybridwrap Agreement**

Generally, courts give effect to hybridwrap terms "where the button required to perform the action manifesting assent (*e.g.* . . . executing a purchase) is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms." *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 266 (E.D.N.Y. 2019) (collecting cases); *see Gaker*, 654 F. Supp.

3d at 73. "[C]onspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility . . . ." *Hodosh,* 2016 WL 705272, at *5 (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002)). Where notice is insufficient, a consumer cannot be deemed to have assented to an arbitration provision. *See Defontes*, 2004 WL 253560, at *6–7.

Conspicuous notice of the arbitration provision was provided on Chewy's checkout page. The solid grey text placed immediately underneath the "Place Order" buttons informed users that they would be bound by the Terms of Use by their purchase and provided "readily apparent" hyperlinks (denoted by being underlined by a dotted line).[3] *See Gaker*, 654 F. Supp. 3d at 74; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79–80 (2d Cir. 2017) ("A reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not."); *Graham v. Bloomberg L.P.*, No. 22-CV-7015 (VSB), 2023 WL 6037974, at *4 (S.D.N.Y. Sept. 15, 2023) ("Where a party is on inquiry notice that clicking a button in a website's interface binds them to contractual terms set out by that website, clicking that button manifests assent."); *Maldonado v. Nat'l Football League*, No. 1:22-CV-02289-ALC, 2023 WL 4580417, at *3 (S.D.N.Y. July 18, 2023) ("[B]y clicking the 'Complete Order'

[3] Ms. Cavas takes issue that the hyperlinks were not in blue but "not all hyperlinks need to have the same characteristics" to convey reasonable notice to the user of a website. *See Gonneville v. Lens.Com, Inc.*, No. 24-cv-11110-PBS, 2025 LEXIS 117656, at *15–16 (D. Mass. Mar. 10, 2025) (collecting cases). The color matters not so long as the hyperlink is readily distinguishable.

or 'Create An Account' buttons, each Plaintiff accepted the contract terms and entered into an agreement with Defendants."); *In re Daily Fantasy Sports Litig.*, No. MDL 16-02677-GAO, 2019 WL 6337762, at *53–54 (D. Mass. Nov. 27, 2019) ("[T]he question at hand is not whether the site was optimally designed, but whether a player had actual or constructive notice . . . [a]ny player who deliberately clicked the 'Play Now' button had such notice from the text immediately adjacent to the button and, by clicking the button, indicated consent.").

The design here is streamlined. Unlike the cluttered website at issue in comparable cases, Chewy placed its notice directly below each "Place Order" button, with no competing sentences or hyperlinks nearby. The identical sentences ("By placing your order, you agree . . .") inform the user that the act of clicking not only manifests assent to purchase the chosen goods, but to the terms provided. *See Domer v. Menard, Inc.*, 116 F.4th 686, 700 (7th Cir. 2024) (holding that a button with two functions, "purchase of an order and assent to the Terms of Service" does not render assent ambiguous). In the top right corner box, the only sentence and hyperlinks associated with the Place Order button are those previously mentioned. At the bottom of the page, Chewy includes two such sentences, again informing any user who wishes to read the terms governing the purchase to both the Terms of Use and the Autoship & Save Terms. Although notice of the Terms of Use would likely be sufficient alone to bind a user to arbitration, the Autoship & Save Terms referenced in the second sentence (near the bottom "Place Order" button) explicitly incorporate them in any event. The website user may choose to ignore the only text directly

associated with placing their order on Chewy's website at their own peril, but that does not mean that they were not provided with notice.

Ms. Cavas' reliance on *In re Snowflake, Inc. Data Security Breach Litig.*, Case 2:24-md-03126-BMM, ECF No. 595 (D. Mont. Oct. 30, 2025) is misplaced. There, the Terms of Use were buried in a long paragraph and were not underlined. The terms also appear in the context of a search engine, where the plaintiff did not expect to have an ongoing consumer relationship. *See* ECF No. 15-7. Ms. Cavas' comparison to *Nicosia* is more apt. But the Second Circuit reversed the lower court in that case on the ground that "reasonable minds could disagree on the reasonableness of notice" and on whether assent was manifested, and explained what was missing:

> Nothing about the "Place your order" button alone suggests that additional terms apply, and the presentation of terms is not directly adjacent to the "Place your order" button so as to indicate that a user should construe clicking as acceptance. *Cf. Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012) (finding Facebook user was "informed of the consequences of his assenting click" because he was shown, immediately below the "Sign Up" button, a notice stating, "By clicking Sign Up, you are indicating that you have read and agree to the Terms and Service").

834 F.3d 220, 236–37 (2d Cir. 2016). Here, Chewy did what the court in *Fteja* found sufficient to manifest assent: placing the hyperlinked Terms of Use and a disclaimer in close proximity "Place Order," rather than cluttering the page as Amazon had done in *Nicosia*.[4]

---

[4] *Nguyen v. Barnes & Noble Inc.* similarly does not advance Ms. Cavas' argument as the Ninth Circuit considered a browsewrap agreement that appeared at the bottom of every page and with no notice stating that users would be bound by terms. 763 F.3d 1171, 1175-76 (9th Cir. 2014). *Defontes* also considered a browsewrap available

Chewy's hybridwrap provides sufficient notice such that an objective user consented to the arbitration clause when placing their order on the checkout page. Thus, Ms. Cavas manifested assent to the Terms of Use and the arbitration clause when she completed her order. The arbitration clause covered "[a]ny and all disputes" between the user and Chewy, all disputes arising from or relating to Chewy's website, including "disputes about the validity, scope or enforceability of this arbitration provision" which Ms. Cavas may now challenge in arbitration. Thus, a valid arbitration clause exists, it covers the subject matter of this Complaint, and the parties are bound by it.

**B. Chewy's Arbitration Clause Is Not Unconscionable**

Ms. Cavas argues that even if she "was given adequate notice of the Terms of Use and arbitration agreement, it is still unenforceable because it is both procedurally and substantively unconscionable." (ECF No. 15 at 21.) "Under Rhode Island law, a claimant seeking to prevent the enforcement of a contract term based on unconscionability must show that the agreement was both procedurally and substantively unconscionable. … Procedural unconscionability occurs when one party is deprived of a meaningful choice, while substantive unconscionability occurs when the challenged contract term is unreasonably favorable to one party." *Whelan Corrente & Flanders LLP v. Nadeau*, 2022 WL 668279, at *9 (R.I. Super. Feb. 28, 2022).

---

"via a hyperlink, inconspicuously located at the bottom of the webpage." 2004 WL 253560, at *6.

The Court finds that Chewy's arbitration provision does not meet the high standard for unconscionability. Procedurally, Ms. Cavas had a meaningful choice of choosing to shop for her pet food elsewhere online or in-person. *Fowler v. Cold Stone Creamery, Inc.*, No. C.A. 13-662 S, 2013 WL 6181817, at *2 (D.R.I. Nov. 25, 2013) ("Plaintiffs lament that their only choice was to accept the franchise agreement as written. This argument overlooks an obvious second option: to decline the franchise and walk away.") She chose nonetheless to purchase goods from Chewy on a recurring basis. Finding procedural unconscionability absent, the Court need not proceed further.

## IV. CONCLUSION

For the foregoing reasons, Chewy's Motion to Compel Arbitration is GRANTED. (ECF No. 14.) This case is STAYED pending resolution of the arbitration. The parties shall notify the Court within fourteen days of the conclusion of the arbitration proceedings.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

September 28, 2026